[Crim. No. 810. Third Appellate District.—September 3, 1924.]

In the Matter of the Application of GEORGE HAINES for a Writ of Habeas Corpus.

[1] CRIMINAL LAW—ESCAPE—SECTION 107, PENAL CODE—APPLICABILITY TO MISDEMEANOR PRISONERS—INTENT.—The legislature in amending in 1923 section 107 of the Penal Code, relating to escapes of prisoners, did not intend to change, and in fact did not so change, said section as to make its provisions less applicable to misdemeanor than to felony prisoners, or, in other words, to change the section in that particular at all.

[2] STATUTORY CONSTRUCTION—AMENDMENT OF EXISTING LAW—DECLARATION IN TITLE—IMPLICATION ARISING FROM.—The declaration in the title of a legislative act that the purpose thereof is to amend an existing law necessarily implies that it is not the purpose or

---

2. When change in statute is to be regarded as creating new statute instead of mere amendment thereof, note, **Ann. Cas. 1914D,** 1171.

intention to destroy entirely the vitals of the latter, but only to add to or take from it some particular provision.

[3] CRIMINAL LAW—ESCAPE—IMMUNITY OF MISDEMEANOR PRISONERS FROM PUNISHMENT—POWER OF LEGISLATURE.—The legislature has the right to immune from punishment a misdemeanor prisoner for escaping or attempting to escape from lawful restraint, or, in other words, limit the punishment for such an act to prisoners charged with and convicted of felonies.

[4] ID.—ESCAPE—ABSENCE OF STATUTE—EFFECT OF.—The crime of escaping or attempting to escape is purely statutory, and in the absence of a statute authorizing punishment for such act by any prisoner, whether under sentence for a misdemeanor or a felony, there would be no legal authorization for maintaining a prosecution against a prisoner for such conduct.

[5] STATUTORY CONSTRUCTION—TITLE OF ACT—ABSENCE OF HARMONY WITH BODY OF ACT—INTENT.—If the title of an act is not in harmony with the body thereof, the courts cannot accept alone the title as the criterion for the ascertainment of the legislative intent at the bottom of the act.

[6] ID.—POWER OF COURTS.—The courts, in the construction of statutes, can neither insert therein what has been omitted therefrom nor omit therefrom what has been inserted therein, but must simply ascertain and declare what in terms or in substance is contained therein.

[7] ID.—OMISSION IN ACT—PURPOSE OF ACT THWARTED—COURTS.—If the body of a statute does not itself reasonably warrant a construction in harmony with its title or utterly fails, even without apparent or real reason, to cover the entire subject to which it relates, the courts cannot supply the omission, howsoever much the act may in a certain particular or because of the omission be impotent for the achievement of its obvious purposes.

[8] CRIMINAL LAW—PRISONERS—PERFORMANCE OF WORK—AUTHORITY OF SHERIFF OR OTHER COUNTY OFFICER.—Neither the sheriff nor any other county officer having lawful control or custody of persons charged with or convicted of crime is vested with legal authority to require prisoners held in his custody other than on misdemeanor charges to perform work on a county road or to do any other county work while in such custody.

[9] ID.—MISDEMEANOR—PUNISHMENT.—No person can be confined elsewhere than in the county jail who is under judgment of imprisonment for an ordinary or so-called low-grade misdemeanor.

---

5. Insufficiency of title as affecting validity of act, note, Ann. Cas. 1916D, 28. See, also, 25 R. C. L. 864.

6. See 25 R. C. L. 961.

7. See 25 R. C. L. 973.

8. See 21 Cal. Jur. 449.

[10] ID.—FELONY PRISONER IN COUNTY JAIL—ESCAPE—VIOLATION OF
SECTION 107, PENAL CODE.—A prisoner held in a county jail on a
felony charge is, ordinarily, in such custody temporarily only—
either pending the examination of the charge against him or
pending and until the completion of his trial on the charge; but,
being thus *pro re nata*, in the lawful custody of the sheriff,
if he escapes or attempts to escape from such custody he is guilty
under section 107 of the Penal Code.

[11] ID.—FELONY—PLACE OF CONFINEMENT.—The lawful place of im-
prisonment of a person convicted of a felony calling for punish-
ment by imprisonment is the state prison.

[12] ID.—PRISONERS WORKING ON COUNTY ROADS—REFERENCE IN SEC-
TION 107, PENAL CODE—APPLICABILITY TO MISDEMEANOR PRISONERS.
Section 107 of the Penal Code, in so far as it refers to prisoners
working on county roads, etc., was intended to and does apply to
prisoners under judgment of conviction for misdemeanor offenses
or such crimes as call for no greater punishment than imprison-
ment in a county or city jail.

---

(1) 21 **C. J.**, p. 831, sec. 17 (Anno.). (2) 36 **Cyc.**, p. 1165.
(3) 21 **C. J.**, p. 831, sec. 17 (Anno.); p. 835, sec. 30 (Anno.).
(4) 21 **C. J.**, p. 828, sec. 11 (Anno.), p. 834, sec. 23. (5) 36 **Cyc.**,
p. 1134. (6) 36 **Cyc.**, p. 1103. (7) 36 **Cyc.**, p. 1103. (8) 13 **C. J.**,
p. 923, sec. 20. (9) 16 **C. J.**, p. 1375, sec. 3240. (10) 21 **C. J.**, p.
831, sec. 17. (11) 16 **C. J.**, p. 1375, sec. 3240. (12) 13 **C. J.**,
p. 923, sec. 20.

PROCEEDING on Habeas Corpus to secure release from
custody on charge of escaping from a county jail. Petition
dismissed; prisoner remanded.

The facts are stated in the opinion of the court.

A. J. Ashen for Petitioner.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

HART, J.—The petitioner claims that he is being unlaw-
fully restrained of his personal liberty by the sheriff of
Shasta County, and has petitioned this court for his enlarge-
ment through the writ of *habeas corpus*. The ground upon
which he seeks release from his alleged unlawful imprison-

---

11. See 21 Cal. Jur. 446.

ment is that there is no such crime known to our law as that for which he is so being held.

It appears from the petition that the prisoner, at the time of the commission of the crime for which the sheriff is now holding him, was serving a sentence in the county jail of Shasta County for the crime of malicious mischief, a misdemeanor, and that while undergoing said sentence, or before the expiration of his term thereof, he escaped from the custody of the sheriff, was subsequently apprehended and returned to the county jail and thereupon charged with and preliminarily examined and held for trial by a magistrate for the crime of escaping from said jail. This charge was founded on section 107 of the Penal Code, as the same was amended by the legislature of 1923. (Stats. 1923, p. 270.)

Section 107, as it originally read, provided: "Every person confined in any other prison than the state prison, who escapes or attempts to escape therefrom, is guilty of a misdemeanor."

The section, as amended by the legislature of 1923, reads as follows: "Every prisoner charged with or convicted of a felony who is confined in any jail or prison or an inmate of any public training school or reformatory or county hospital, or who is engaged on any county road or other county work or who is in the lawful custody of any officer or person, who escapes or attempts to escape from such jail, prison, public training school, reformatory or county hospital, or from the custody of the officer or person in charge of him while engaged on or going to or returning from such county work or from the custody of any officer or person in whose lawful custody he is, is guilty of a felony and is punishable as provided in section one hundred eight of the Penal Code."

The title of the act of 1923 amending said section reads as follows: "An act to amend section one hundred seven of the Penal Code, relating to escapes and attempts to escape from county jails, city jails and county hospital, and from the custody of the sheriff."

It is conceded that if the act of the petitioner in escaping from the custody of the sheriff does not fall within the terms of section 107, amended as above indicated, the sheriff is without authority to hold him for the crime of escaping from his custody, since there is no other provision or section of

the Penal Code which provides a penalty for the act of escaping from a county or city jail or from lawful custody by a prisoner confined or held therein on a misdemeanor charge.

The petitioner's position is that the phrase employed in the section as amended, to wit, "Every prisoner charged with or convicted of a felony, . . . ," expressly limits the operation of its provisions to that class of prisoners confined in a county or city jail, etc., held therein on felony charges. In other words, his contention is, using the language of his brief on file herein, "The relative pronoun 'who' used throughout the statute (sec. 107 as amended) relates back to the 'prisoner' mentioned at the beginning of the statute, namely: A prisoner charged with or convicted of a felony."

The language of the section, before its amendment, was sufficiently scopeful to embrace within its terms misdemeanor as well as felony prisoners, the obvious object of the amendment being only to prescribe an aggravated penalty for the offense or a greater penalty than that authorized by the section in its original draft. [1] The amendment is awkwardly expressed and its language appears rather ambiguous, hence the whole question here is one of legislative intent with respect to its scope, and as to this a view of the language of the amended section by the light of the manifest reasons for such legislation as is involved therein can lead to no other rational conclusion than that the legislature did not intend and in fact has not so changed section 107 as to make its provisions less applicable to misdemeanor than to felony prisoners, or, in other words, to change the section in that particular at all.

It may first be remarked that no sound reason for repealing section 107, in so far as it applied to misdemeanor prisoners, can be suggested or conceived of. To the contrary, there is equally as strong reason for prescribing a punishment for the act of escaping or attempting to escape from lawful custody by misdemeanor prisoners as there is for prisoners held on felony charges. One of the dominant essentials of a properly managed prison, whether a state, county or city, involves rules of discipline whereby the behavior of prisoners confined therein is regulated and controlled. Naturally, there is always a strong temptation in

the breast of every person confined within the walls of a prison as a prisoner to regain his liberty, to which he is not legally entitled until he has paid in full the penalty which the law has annexed to the criminal act for which he is being imprisoned. The escape or attempt to escape by a prisoner, whether from a local jail or a state prison, tends to the general disruption of the prison discipline, and, as often such conduct by prisoners has caused, may be the cause of the slaying or serious wounding of officers or guards of the prison from which the escape or attempt to escape is made. Hence, such an act by persons legally confined in prisons or jails before their terms of imprisonment have expired is justly regarded as among the most flagrant violations of the rules governing prison discipline. It was obviously upon these considerations that the legislature at a very early date in the history of the jurisprudence of California declared that for such conduct a prisoner should be deemed guilty of an offense against the state, regardless of the character or degree of the offense for which he was being held in restraint, so far as the *quantum* of punishment was concerned, or the character of the prison in which he was confined. At once it must become apparent from the foregoing observations that there does not exist, nor can there be imagined, any less reason for penalizing a misdemeanor prisoner for escaping or attempting to escape from lawful custody than there is for likewise penalizing a felony prisoner, or that there does not now exist equally as sound reason for punishing a misdemeanor prisoner for such conduct as existed when section 107 of the Penal Code was originally enacted.

Proceeding now to an examination of the statute amending section 107, we first find in its title a singularly significant declaration with respect to its object. The title states, it will be noted, that the purpose of the act is to *amend* section 107 of the Penal Code. It is manifest that, if the intention had been to destroy all the vital terms of said section as it read prior to its amendment in 1923, the legislature would not only not have stated in the title of the amending act that its purpose was to *amend* the section, but would in all probability have enacted the statute independently of any consideration of the existing law relating to escapes, etc., by prisoners, and at the same time would probably have

expressly repealed the provisions of the section as it then existed. At any rate, it would seem to be clear that, had it been the intention of the legislature to substitute entirely new and different provisions for those of section 107 as it stood prior to the amendment, it would not have allowed the title to declare that the purpose was to amend said section. [2] It would seem to be wholly needless to suggest that the declaration in the title of a legislative act that the purpose thereof is to *amend* an existing law necessarily implies that it is not the purpose or intention to destroy entirely the vitals of the latter, but only to add to or take from it some particular provision. [3] It is to be conceded, however, that the legislature would have the right to immune from punishment a misdemeanor prisoner for escaping or attempting to escape from lawful restraint, or, in other words, limit the punishment for such an act to prisoners charged with and convicted of felonies. [4] Indeed, the crime of escaping or attempting to escape is purely statutory, and in the absence of a statute authorizing punishment for such act by any prisoner, whether under sentence for a misdemeanor or a felony, there would be no legal authorization for maintaining a prosecution against a prisoner for such conduct. [5] It is further to be conceded that if the title of an act is not in harmony with the body thereof, the courts cannot accept alone the title as the criterion for the ascertainment of the legislative intent at the bottom of the act. [6] The courts, in the construction of statutes, can neither insert therein what has been omitted therefrom nor omit therefrom what has been inserted therein; but must simply ascertain and declare what in terms or in substance is contained therein. (Sec. 1858, Code Civ. Proc.) [7] Hence, if the body of a statute does not itself reasonably warrant a construction in harmony with its title or utterly fails, even without apparent or real reason, to cover the entire subject to which it relates, the courts cannot supply the omission, howsoever much the act may in a certain particular or because of the omission be impotent for the achievement of its obvious purposes. But, as previously intimated, the language of the statute in question is reasonably capable of a construction entirely in line with the plain and significant implication of its title, and indicates with sufficient clearness the intent

of the legislature to include within its terms prisoners of all classes who violate its provisions. It will be observed that the amended section expressly declares that a prisoner engaged on any county road or other county work who escapes or attempts to escape from the officers or person in charge of him while engaged on or going to or returning from such county work, etc., is subject to the condemnation of the statute. That provision of the section was unquestionably intended to cover prisoners held in local jails or in the custody of proper county officers on misdemeanor charges. [8] This proposition is clear from the fact that neither the sheriff nor any other county officer having lawful control or custody of persons charged with or convicted of crime is vested with legal authority to require prisoners held in his custody other than on misdemeanor charges to perform work on a county road or to do any other county work while in such custody. The act of any officer having the management or control of a prison in permitting prisoners confined therein to be released from their imprisonment for any purpose before the terms of their sentences have been spent would be in flagrant disregard of the duties of such officer in the absence of a valid law authorizing such a course. In this state the legislature has expressly declared that prisoners confined in a county or other local jail under a judgment rendered in a criminal action or proceeding may be required by the order of the board of supervisors to perform labor on the public works or ways in the county. (Sec. 1613, Pen. Code.) [9] No person can be confined elsewhere than in the county jail who is under judgment of imprisonment for an ordinary or so-called low-grade misdemeanor. (Sec. 19, Pen. Code; *People* v. *Sacramento Butchers' Assn.,* 12 Cal. App. 471, 489 [107 Pac. 712].) [10] A prisoner held in a county jail on a felony charge is, ordinarily, in such custody temporarily only—either pending the examination of the charge against him, or pending and until the completion of his trial on the charge; but, being thus *pro re nata,* in the lawful custody of the sheriff, if he escapes or attempts to escape from such custody he is guilty under the statute in question. [11] The lawful place of imprisonment, though, of a person convicted of a felony calling for punishment by imprisonment is the state prison. Section 1586 of the Penal

68 Cal. App.—34

Code provides, *inter alia*, that convicts or prisoners confined in the state prison may be employed "in the performance of work for the state." We understand that by the language in quotation "state work" as distinguished from "county work" is referred to and intended. **[12]** As, therefore, said section does not expressly authorize the employment of such convicts on county roads, and, as we know of no other section of any of the codes or of any other statute which authorizes such convicts to be so employed, it follows that section 107, in so far as it refers to prisoners working on county roads, etc., was intended to and does apply to prisoners under judgment of conviction for misdemeanor offenses or such crimes as call for no greater punishment than imprisonment in a county or city jail.

Accordingly, the petition for the writ is dismissed and the prisoner remanded to the custody of the sheriff of Shasta County.

Plummer J., and Finch, P. J., concurred.